ILLGES *vs.* DEXTER *et al.*

[Blandford, Justice, did not preside in this case.]

Where courts of equity and of law have concurrent jurisdiction, and the former assumes it first, the suitor will not be forced into a court of law, unless at the beginning of the equity suit a court of law could have given him as adequate and complete relief as the court of equity could do.

(a.) A bill brought to compel an agent entrusted with the sale of property at a minimum price to account to his principal for his part of what the agent actually realized from the sale, as amended, alleged further that the complainant, the original defendant and his confederates (made parties by amendment), were tenants in common or joint owners of a railroad sold by the governor of the state, and purchased by them; that the original defendant could not pay the whole amount due complainant, the other defendants having pocketed part of the fruits of the fraud; and that the title to complainant's share was fraudulently procured from him:

*Held,* that the remedy in a court of equity is more complete than at law.

October 21, 1884.

Equity. Fraud. Before Judge WILLIS. Muscogee Superior Court. May Term, 1884.

Abraham Illges filed his bill against Armory E. Dexter alleging, in brief, as follows: The North and South Railroad was incorporated in 1870 to run from Columbus to Rome. Under the act of incorporation, the state endorsed

bonds of the company to the extent of $240,000.00, but the company, after having partially constructed the road, failed to pay the interest on the bonds; and being in default, the governor, being authorized to do so, sold the railroad. It was purchased by complainant and others, and they were put in possession; they formed a new company under the name of the Columbus and Rome Railroad Company, and extended the road for some miles, and operated it. The defendant, Dexter, was a member of the new company and owned an interest in it. The owners of the road did not issue stock, but were tenants in common, owning different interests, in proportion to the amounts paid in by them, and held under deeds. The complainant owned 43-200 of the road and its property. Dexter owned a definite interest, but complainant does not know how much. In 1881, the owners desired to sell the property, and fixed a minimum sum of one hundred thousand dollars, exclusive of its indebtedness to the state, but desired to get more if they could. Dexter was present at all the meetings, was a director, and knew the feelings and wishes of the other owners, and, in common with them, expressed his wish to sell, and aided in fixing the minimum amount. About June, 1881, when other agents had failed to sell, Dexter went to different stockholders, and among them to complainant, and represented that he had friends in eastern cities among whom he thought he could negotiate a sale, of the road, if the owners would constitute him their agent to sell; and in order to place him in a position to definitely act, desired complainant and the others to make him separate deeds, and to leave the name of the grantee blank. Complainant, relying on the good faith of Dexter, did as requested, and delivered the deed to him to effect the sale, as agent for him. Dexter having possessed himself of similar deeds from other stockholders, confederating with persons unknown (for which he had a private arrangement made beforehand), sold the railroad to unknown parties for one hundred and fifty-three thousand dollars, as com-

plainant is informed and believes, and deposited in bank for complainant $21,500.00, which would have been his share if the sale had been made at $100,000.00. Dexter kept the additional sum over $100,000.00, and divided it between himself and other parties connected with the fraudulent combination, and he refuses to settle or account for more than complainant's part of $100,000.00. Compainant asked for discovery, and propounded interrogatories to ascertain the details of the transaction and the participants therein. The prayer was for an account and settlement; that the persons confederating with Dexter and receiving the proceeds be made parties when discovered; that they account for what they had received; for subpœna and general relief.

This bill was amended, in brief, as follows: In the transaction referred to in the original bill, complainant made Dexter his agent to sell the property, and Dexter accepted the agency, and, in violation of the trust, combined with persons unknown to defraud complainant, and secretly, in pursuance of said combination, sold complainant's interest for a sum largely in excess of the minimum price agreed on. Having so sold, he and his confederates agreed on a scheme to keep complainant in ignorance of what amount he did sell for. The defendant inserted his own name as grantee in the blank delivered by complainant to him, and pretended to be the purchaser, and concealed the same from complainant. It is charged that W. F. McCormick, W. D. Chipley and the Columbus and Rome Railroad are confederates of Dexter, and it is·prayed that they be made parties. It is also alleged that defendant is unable to pay the amount of damages chargeable against him. Defendant demurred to the bill for want of equity, and because there was a common law remedy. The court sustained the demurrer, and dismissed the bill. Complainant excepted.

SMITH & RUSSELL; W. A. LITTLE, for plaintiff in error.

PEABODY & BRANNON, for defendants.

JACKSON, Chief Justice.

This bill was brought to compel an agent entrusted with the sale of property at a minimum price to account to his principal for his part of what the agent actually realized from the sale.   The amendment alleges that others assisted in the transaction, and helped the defendant in the breach of trust and the fraud on the complainant.   The bill alleges that all these parties, the original defendant and the confederates made defendants by the amendment, were tenants in common or joint owners of a railroad sold by the governor of this state and purchased by them, and the complainant also was one of these joint owners ; and the amendment avers that the original defendant could not pay the whole amount due him, the others having pocketed part of the fruits of the fraud. The bill alleges further that title to complainant's share was fraudulently procured from him, and states the facts by which it was accomplished.

On demurrer to this bill as amended, the demurrer was sustained and the bill was dismissed, and this is the error complained of.   The court below put the decision on the ground of a complete remedy at law.

We cannot so see the law of the case.   Equity has jurisdiction of trust.   This agent was trustee, according to the allegations in the bill.   Equity has jurisdiction in cases of fraud, and will help ferret out all fraud.   It has jurisdiction of a case of trust and fraud, especially where many confederate to cheat, and help a trustee to perpetrate a fraud, and get part of the proceeds.   The remedy it can give in such a case is more adequate and complete than a court of law can render.   Indeed, the amendment charges that the trustee cannot pay complainant the amount due him, and if the others assisted him, it is clear that they, too, would be liable in proportion, at least, to the profit each received, and to fix this liability of each is peculiarly the province, as it is in the power of courts of equity.

Glancing at the answers in the record, we find that they make quite a different case ; but we are dealing with the bill alone, and taking the allegations in it as amended, we are quite clear that there is equity in it, and no complete remedy at law—certainly none as full and complete as equity can reach.

The principle is, that where equity and law courts have concurrent jurisdiction, and equity courts assume it first, the suitor will not be forced into a law court, unless at the beginning of the equity suit a court of law could have given him as adequate and complete relief as the court of equity could.

Judgment reversed.